IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

TIMOTHY SUTTON, #353-306    *

    Plaintiff,    *

v.    *    Civil Action No. WDQ-11-2851

WARDEN, MTC    *
CORIZON
                              *

    Defendants.
                              *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Timothy Sutton is suing Solomon Hejirika, Warden of the Metropolitan Transitional Center ("MTC") and Corizon, Inc. ("Corizon"), a contractual health care provider, under 42 U.S.C. § 1983. The Defendants have filed motions to dismiss or, in the alternative, for summary judgment, ECF Nos. 15, 20, and Sutton has filed an opposition to Corizon's motion, ECF No. 24.[1] Upon review of the papers and exhibits, the Court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated, the Defendants' motions will be construed as motions for summary judgment and will be granted.

**I.   BACKGROUND**[2]

On May 22, 2009, Sutton was discovered "lying on B-Block steps" by Officer A. Ogunbiyi and taken to the MTC dispensary. ECF No. 15 Ex. 2 at 4. Corrections officers informed prison medical staff that Sutton, who was unable to provide a statement because his mouth was packed with cotton, had been assaulted. *See id* at 1-4, Ex. 4 at 1. MTC medical staff observed Sutton had a "laceration to the face and mouth with missing teeth[,]" his face was "covered with blood and actively

---

[1] Sutton requested and was granted additional time to file a reply to Warden Hejirika's dispositive motion, but no opposition was filed. ECF Nos. 19, 22.

[2] In a motion for summary judgment, Sutton's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

bleeding," and there was an injury to his right eyebrow.[3] *Id.* Ex. 4 at 1.

Sutton was transported to Johns Hopkins Hopsital by ambulance the same day. ECF No. 20, Ex. A ¶ 3. Hopkins physicians determined Sutton's mandible (lower jaw) was broken in two places, and found no evidence of cervical or brain injury. *Id.* Dr. Tedla, Corizon staff physician at MTC, attests a "miscommunication"[4] led JHH physicians to believe they were not authorized by Wexford Health Sources, Inc. ("Wexford")[5] to surgically repair the broken jaw; consequently, Sutton's surgery was postponed until May 28, 2012 and he was discharged to the MTC infirmary. *See id; see also id.* Ex. B 18, 28. Sutton was "drooling his saliva, [had a ] wide open his mouth, and [had] pain at the fracture site." *Id.* Ex. B 22. At the MTC Infirmary, he was given ice to decrease jaw swelling, prescribed Percocet for pain control, and placed on a liquid diet. *See id.* Ex. A, ¶ 3, Ex. B 1-21.

On May 26, 2009, Sutton was taken to the Emergency Department at the University of Maryland Medical System ("UMMS") for further evaluation and treatment of his mandible fractures. ECF No. 20 Ex. A ¶ 4. After a discussion among UMMS, JHH, and MTC physicians and surgeons, it was decided that Sutton's surgery would be performed at JHH. *Id.* Sutton was admitted to JHH, and on May 27, 2012, underwent an open reduction and internal fixation of his mandible

---

[3] Sutton states he was unable to defend himself because his left arm is "dysfunctional" from a prior assault. ECF Nos. 1 at 5, 5 at 4. Sutton's arm injury is not at issue in this case.

[4] On May 26, 2009, Dr. Fasil Wubu at the MTC was informed that JHH surgeon Dr. Boahene did not "accept the Wexford insurance" and that Sutton would have to have his surgery at another hospital. ECF No 20, Ex. B 21-23. Dr. Wubu noted Sutton would be sent to the University of Maryland Medical System. *See id.* at 21-22. A facsimile from the Johns Hopkins Outpatient Center, Department of Otolaryngology-Head and Neck Surgery dated May 26, 2009 reads: "This is to confirm that the appointment of May 28, 2009 with Dr. Boahene has been cancelled because Hopkins is not contracted with Wexford Health Services. Please seek an appointment with an In-network provider." *Id.* at 23.

[5] Wexford is the utilization review contractor for the State of Maryland. ECF No. 20 Ex. A ¶ 3 n. 2. It reviews and approves all requests by on-site and off-site consultants for certain medical devices and tests. *Id.* Corizon is neither affiliated with Wexford nor controls Wexford's approval process. *Id.* Wexford is not a party in this case.

2

fractures using titanium plates and screws.[6] *Id.* After surgery, Sutton was transferred to the MTC Infirmary for observation and medical care. *Id.* Sutton exhibited no complications from surgery. *Id.* Ex. A ¶ 4, Ex. B 22-36.

Sutton was seen for follow-up visits by MTC medical staff on May 27, 28, 29, 30, 31, and June 2, 2009. ECF No. 20 Ex. B 34-45. Postoperatively, Sutton was prescribed and received: 1) Clindamycin, an antibiotic, to prevent infection; 2) Peridex mouthwash, an antimicrobial rinse; 3) Percocet for pain relief; and 4) Boost, a nutritional supplement. ECF No. 20 Ex. B at 32, 34, 36. He was also placed on a soft diet to prevent him from chewing on hard food. *See id.* On May 29, 2009, he refused to take Clindamycin. *See id.* at 42. On June 2, 2009, Sutton's pain medication was changed to Tylenol elixir. *See id.* at 46. He was discharged to the general prison population on June 3, 2009. *Id.* at 49.

On June 5, 2009, Sutton was transferred to the Brockbridge Correctional Facility ("BCF") where he requested narcotic medication for pain relief. *See id.* at 53. Because narcotics are not administered at BCF, Sutton was transferred on June 9, 2009 to the Maryland Correctional Institution-Jessup ("MCI-J"). *See id.* at 54-56. At MCI-J, a physician prescribed Extra Strength Tylenol instead of a narcotic for pain relief. *Id.* Ex. A, ¶ 7, Ex. B 59.

On June 25, 2009, Sutton was transported to JHH for his post-surgical evaluation. ECF No. 20 Ex A. ¶ 8. His surgeon reported that Sutton was healing appropriately and recommended advancing Sutton's diet to normal food as tolerated. *Id.* Ex. A ¶ 8, Ex. B 60. On August 26, 2009, Sutton was transferred to the Western Correctional Institution ("WCI") where he received Tylenol

---

[6] Mandible fractures can be repaired using plates and screws or with braces, called Erich Arch Bars, which are wired into the patient's teeth. ECF No. 20 Ex. A ¶ 5. Because Sutton had no spine fractures, no plates or fixation devices were placed into his back. *Id.* at ¶ 4. The treating surgeon decides which method is used and whether to delay surgery or operate immediately. *Id.* at ¶ 5. A mandible fracture is not a medical emergency, so long as a patient's airway is maintained. *Id.* at ¶ 6.

for pain. *Id.* Ex. A ¶ 9. On October 9, 2009, Sutton's nutritional supplement was discontinued because his body mass index had returned to normal, and he was eating a regular diet. *Id.* ¶ 10.

On December 15, 2010, Alan Graves, D.D.S. referred Plaintiff to an oral maxillofacial surgeon at UMMS for an evaluation for possible removal of the fixation plates.[7] *Id.* ¶ 11. On January 25, 2011, Sutton was transferred to the Maryland Correctional Training Center ("MCTC"). *Id.* ¶ 13. On February 15, 2011, Sutton was taken to UMMS, where an oral maxillofacial surgeon removed the fixation screws and plates from his mandible and extracted his impacted tooth. *Id.* Sutton received antibiotics and Percocet for pain, tolerating the procedures well and suffered no complications. *Id.*, Ex. B at 76-94.

On December 12, 2011, Sutton was transferred to the Patuxent Institute. *Id.* Ex. A ¶ 14. While there, he complained of jaw pain and was given Motrin every six hours for two days. *Id.* On December 29, 2011, Sutton was transferred to Eastern Correctional Institution ("ECI"). *Id.* Although Sutton claims to suffer constant migraines and nightmares, his medical records do not show he has raised such complaints with Corizon medical personnel. *Id.* ¶ 15.

The Internal Investigative Unit investigated the attack on Sutton. ECF No. 15, Ex. 5. On June 4, 2010, Detective Sergeant Raymond Wills attempted to interview Sutton, who refused to cooperate. *See id.* at 6. Wills reported that Sutton indicated he did not know who attacked him or why they attacked him. *See id.*

Sutton filed suit against Hejirika on October 5, 2011 under 42 U.S.C. § 1983. *See* ECF No. 1. Corizon was added as a party on October 31, 2011. ECF No. 7. Sutton advances the following claims: 1) there were no correctional officers posted in the area at the time he was assaulted, ECF

---

[7] The contractual dental provider at WCI, Mumby & Simmons Dental Consultants, PC ("Mumby & Simmons"), is not a party in this case. Corizon is not affiliated with Mumby & Simmons and has no control over the dental treatment provided to inmates at WCI. ECF No. 20 Ex. A ¶ 12.

Nos. 1 at 5-6, 5 at 4; 2) he was denied emergency medical attention when he was sent to JHH for treatment because MTC did not authorize his transfer to JHH, ECF No. 5 at 4, and 3) he remained at MTC for three days until he was transported a second time to JHH for surgery on his broken jaw, *id.* He alleges that because his jaw was not wired shut properly, he suffers constant migraine headaches, back pain, and nightmares. ECF No. 1 at 6. As relief, Sutton demands monetary damages of unspecified sum.[8] *See id.*

## II.   ANALYSIS

### a. Standard of Review

Under Fed. R. Civ. P. 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to ... the nonmovant," and draw all reasonable inferences in his favor, *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

---

[8] Sutton did not file a Request for Administrative Remedy (ARP) in regard to his attack. ECF No. 5 at 6. He states his frequent transfers to different correctional facilities prevented him from using the ARP process. *Id.*

b. **Claims Against Warden Hejirika**

1. **Failure to Protect**

"The [E]ighth [A]mendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004). Unless a prison official actually makes this inference, he does not act with deliberate indifference, even when his actions violate prison regulations or can be described as stupid or lazy. *See Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir.1997). Negligent failure by a prison official to protect an inmate from attack by another inmate does not state a claim under the Eighth Amendment. *See Pressly*, 816 F.2d at 979.

Here, there is no evidence Hejirika had knowledge of or reason to infer a specific threat to Sutton's safety and acted with disregard to it.[9] Sutton does not claim that he told Hejirika about a specific threat of danger or shared such concerns with corrections officers. Sutton informed the IIU investigator he did not know who had attacked him or why he was attacked. ECF No. 15 Ex. 5 at 6. There is no evidence suggesting Hejirika acted with deliberate indifference to Sutton's safety. *See Farmer*, 511 U.S. at 837. Hejirika is entitled to summary judgment.

---

[9] To the extent Sutton intends to hold Hejirika culpable as a supervisor, he provides no facts or legal grounds for assigning supervisory liability. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

2.     **Medical Care**

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). When prison officials show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id.* at 104. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Prison officials such as Hejirika are entitled to rely on medical judgments and expertise of prison physicians and medical personnel concerning the course of treatment deemed necessary for prisoners. *See Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir.1990).

In this case, corrections officers brought Sutton to the MTC medical unit for treatment after he was discovered injured and then transported him to the hospital for emergency care and subsequently for surgery. ECF No. 20 Ex. A ¶¶ 3, 4. Sutton fails to demonstrate how Hejirika, who was entitled to rely on the recommendations of medical providers, acted with deliberate indifference to his medical needs. *See Miltier v. Beorn*, 896 F.2d at 854-55. The confusion that delayed surgery was neither deliberate nor attributed to Hejirika. *See* ECF No. 20 Ex. A ¶ 3. No genuine issue of material fact is presented and Hejirika is entitled to summary judgment.

c. **Claim Against Corizon**

Corizon provides contractual medical services to inmates at certain Maryland correctional facilities. To the extent Corizon is named as a defendant based solely upon vicarious liability, a

private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior.[10] *See Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003); *see also Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) ("principles of respondeat superior have no application to § 1983 actions"). Consequently, there is no legal basis for Corizon's liability.

Additionally, Sutton fails to show Corizon or its employees acted with requisite deliberate indifference to his medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is shown by establishing that a defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An inmate's disagreement with medical providers about the proper course of treatment generally does not support an Eighth Amendment cause of action. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Medical providers examined Sutton after the attack, arranged for his emergency treatment at JHH, and treated him preoperatively and postoperatively. *See* ECF No. 20 Ex. A. Although surgery was not performed for some five days due to a misunderstanding at JHH about insurance coverage, he received continuous medical care while awaiting his operation. *See* ECF No. 20 Ex. B 28. This delay and the allegedly ensuring migraines, headaches, and nightmares do not as presented here satisfy the standard for deliberate indifference. *See Farmer*, 511 U.S. at 837. Corizon is entitled to summary judgment.

---

[10] Respondeat superior is a legal doctrine whereby an employer may be held responsible for its employees. *See Monnell* v. *Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 693 (1978).

## CONCLUSION

For the reasons stated above, the Court will grant the Defendants' motions for summary judgment. A separate order follows.

9/5/12
Date

William D. Quarles, Jr.
United States District Judge